Thomas J. Egan, Esq. Town Attorney, Woodbury
You ask whether under Agriculture and Markets Law, §§ 373 and 374 a society for the prevention of cruelty to animals or similar humane societies may take possession of wildlife found in public places, provide necessary medical treatment for such animals, and restore them to their natural habitat.
Agriculture and Markets Law, §§ 373 and 374, added by chapter 545 of the Laws of 1971, derived from the provisions of the Code of Criminal Procedure (L 1940, ch 111). Sections 373 and 374 are found in Article 26 of the Agriculture and Markets Law, entitled "Animals". Section 373 authorizes any agent or officer of the American Society for the Prevention of Cruelty to Animals or of any duly incorporated society for the prevention of cruelty to animals to take possession of any "lost, strayed, homeless or abandoned animal found in any street, road or other public place" (id., § 373[1]), and pursuant to a duly issued warrant, any animal found improperly confined or kept on private property (id.,
§ 373[2]). In addition, an agent or officer may take possession of "any unwanted animal from the person in possession or custody thereof" (id., § 373[3]), and any animal in the possession of a person at the time of such person's arrest (id., § 373[4]). The term "animal", as used in Article 26, is defined as "every living creature except a human being" (id., § 350[1]). Section 374 provides for the humane destruction of animals seized under section 373 upon either the certification of a licensed veterinarian or the findings of two citizens that the animal is so diseased or disabled so as to be unfit for any useful purpose, or upon the written consent of the owner (id., § 374[1]). Absent such certificate or findings, the society may after five days humanely destroy the animal, unless it is "earlier redeemed by its owner" (id., § 374[2]). Section 374(4) establishes the procedure for redemption by an owner. In lieu of destruction or redemption, the society may deliver the animal to some person other than the owner after the time for redemption has expired (id., § 374[3]).*
Articles 11 and 13 of the Environmental Conservation Law ("Fish and Wildlife Law") were enacted in 1972 by chapter 664 of the Laws of 1972. These provisions establish a statewide policy of fish and wildlife protection and vest the State with title to all fish and wildlife in the State, except those legally acquired and held in private ownership (Environmental Conservation Law, §§ 11-0101, 11-0105; Sloup v Town ofIslip, 78 Misc.2d 366 [Sup Ct, Suffolk Co, 1974]). "Wildlife" is defined as "wild game and all other animal life existing in a wild state, except fish, shellfish and crustacea" (Environmental Conservation Law, §11-0103[6][a]). Environmental Conservation Law, § 11-0105 provides:
 "The State of New York owns all fish, game, wildlife, shellfish, crustacea and protected insects in the state, except those legally acquired and held in private ownership. Any person who * * * possesses * * * wildlife * * * thereby consents that title thereto shall remain in the state for the purpose of regulating and controlling their use and disposition.".
The statute vests comprehensive regulatory powers in the Department of Environmental Conservation for "the efficient management of the fish and wildlife resources of the state" (id., § 11-0303[1]). Environmental Conservation Law, § 11-0107 provides:
 "1. No person shall, at any time of the year, pursue, take, wound or kill in any manner, number or quantity, any fish protected by law, game, protected wildlife, shellfish, harbor seals, crustacea protected by law, or protected insects, except as permitted by the Fish and Wildlife Law.
 "2. No person shall, at any time of the year, buy, sell, offer or expose for sale, transport, or have in his possession any fish protected by law, game, protected wildlife, shellfish, harbor seals, crustacea protected by law, or part thereof, or protected insect, whether taken within the state or coming from without the state, except as permitted by the Fish and Wildlife Law." (Emphasis provided.) The term "protected wildlife" is defined as "wild game, protected wild birds and endangered species of wildlife designated by the department pursuant to section 11-0535" or species listed in section three hundred fifty-eight-a of the Agriculture and Markets Law (now Environmental Conservation Law, § 11-0536). The term "person", for purposes of Articles 11 and 13, means "any individual, firm, co-partnership, association or corporation other than the state and a public corporation" (id., § 1-0303[18]). A society for the prevention of cruelty to animals is a not-for-profit corporation (Not-for-Profit Corporation Law, §§ 201, 1403), not a public corporation (see, General Construction Law, § 66[1]), and thus clearly is subject to the provisions of the Environmental Conservation Law.
To implement this State policy of wildlife protection, the Environmental Conservation Law generally prohibits the possession of wildlife without having first contained a license or permit therefor from the Department of Environmental Conservation (Environmental Conservation Law, §§11-0511, 11-0515, 11-0521, 11-0523). Section 11-0511 states:
 "1. No person shall, except under license or permit first obtained from the department, possess, transport or cause to be transported, imported or exported any live wolf, coyote, coydog, fox, skunk or racoon, endangered species designated pursuant to section 11-0535 hereof, species named in section 11-0536 or other species of native or non-native live wildlife or fish where the department finds that possession, transportation, importation or exportation of such species of wildlife or fish would present a danger to the health or welfare of the people of the state, an individual resident or indigneous fish or wildlife population * * *.
 "2. No person shall possess, sell or breed ferrets, fitch-ferrets or fitch except under license issued by the department revocable at its pleasure."
Section 11-0515 authorizes the Department to issue licenses to collect or possess wildlife, or to possess and sell protected wildlife, for propagation, banding, scientific or exhibition purposes and to make regulations governing the possession of wildlife to protect them from cruelty, disease or undue discomfort (id., § 11-0515[1], [2], [3]).
Section 11-0521 provides:
 "1. The department may * * * issue a permit to any person, to take any wildlife at any time whenever it becomes a nuisance, destructive to public or private property or a threat to public health or welfare. Wildlife so taken shall be disposed of as the department may direct."
There are limited exceptions to this permit requirement. Section 11-0523 permits the taking or killing of certain destructive or menacing wildlife without a permit by certain owners, lessees and occupants of land. Section 11-0919, entitled "Aid to wildlife in distress", authorizes "any person" who discovers protected wildlife in distress initially to capture such wildlife and render necessary aid without a permit, but requires the captor to notify immediately a conservation officer in the Department for the purpose of obtaining a temporary permit authorizing possession. If such wildlife requires continuing human assistance or aid, the captor must within forty-eight hours after capture obtain a certification from a licensed veterinarian to that effect which must be forwarded to the Department (id., § 11-0919). At the conclusion of medical treatment, the veterinarian must certify whether or not the wildlife is in continuing distress (ibid.). If the wildlife is not in distress it must be immediately released into the wild "in habitat suitable to such species" (ibid.). Environmental Conservation Law, § 11-0917(10) provides:
 "No wildlife shall be possessed [or] transported * * * contrary to the terms of any statute, or order, permit or license of the department, pursuant to which it was taken or acquired" (id., § 11-0917[10]).
We note that agents or officers of a duly incorporated society for the prevention of cruelty to animals are "peace officers" (Criminal Procedure Law, § 2.10[7]), and as such, are authorized, when acting pursuant to their special duties, to enforce the provisions of the Fish and Wildlife Law (Environmental Conservation Law, § 71-0907).* As noted in our earlier discussion, an incorporated society for the prevention of cruelty to animals is one whose purpose is to enforce laws relating to animals. Such authority includes the power to seize wildlife unlawfully possessed (id., §§ 11-0511, 71-0907[4], [5]), abate specified nuisances (id.,
§ 71-0915), accept the surrender of wildlife lawfully possessed (id., § 11-0519[c]), and take possession of destructive wildlife upon the direction of the Department. In each of these instances, possession of wildlife seized by a peace officer is deemed vested in the Department on behalf of the State (id., § 11-0519), and disposition of such wildlife is to be made by the peace officer in accordance with the directions and regulations of the Department (id., §§ 11-0511, 11-0519, 11-0521, 71-0907, 71-0915).
The Fish and Wildlife Law establishes a comprehensive system of wildlife regulation and protection. We think it is clear from the foregoing cited sections of the Environmental Conservation Law that the Legislature intended that statute to occupy the entire field of wildlife regulation (see, Environmental Conservation Law, §§ 11-0105, 11-0107, 11-0511,11-0917[10]; Sloup v Town of Islip, supra). In Sloup, the court stated that the Environmental Conservation Law "represents the current culmination of a long-standing legislative effort to establish a sound system of Statewide control and protection of State fish and wildlife resources" (id. at 371). To conclude that sections 373
and 374 of the Agriculture and Markets Law apply to wildlife would mean not only that the State, as the owner of wildlife, would be subject to the redemption provisions of section 374, but also that agencies or officers of a society could seize and summarily cause the humane destruction of protected wildlife. In view of the extensive protection of wildlife under the Environmental Conservation Law, we do not think the Legislature could have intended these results.* We note, also, that the language of sections 373 and 374 referring to the seizure of animals lost, strayed, homeless, abandoned, improperly confined or kept, unwanted or in the possession of a person arrested on its face indicates that those provisions were intended to be applicable only to domestic animals, not to wildlife. "Wildlife" is defined as wild game and all other animal life "existing in a wild state" (Environmental Conservation Law, § 11-0103[6][a]). By definition, therefore, wildlife cannot be lost, strayed, homeless, abandoned or improperly confined or kept, unwanted or possessed as contemplated under Agriculture and Markets Law, §§ 373 and 374.
We are of the opinion, therefore, that sections 373
and 374 of the Agriculture and Markets Law do not authorize the possession and rehabilitation of wildlife, nor the restoration of wildlife to their natural habitat. Such matters, in our view, are governed exclusively by the Environmental Conservation Law.
We conclude that the possession and rehabilitation of wildlife, as well as the restoration of wildlife to their natural habitat, are governed exclusively by the Environmental Conservation Law. Agents or officers of an incorporated society for the prevention of cruelty to animals or other humane societies may not engage in such activities, except in accordance with the procedures set forth in that statute.
The Attorney General renders formal opinions only to officers and departments of the State government. This perforce is an informal and unofficial expression of views of this office.
* We wish to clarify that not all humane societies organized for the benefit of animals are to be considered societies for the prevention of cruelty to animals. In 1952 Op Atty Gen 167, we pointed out that a corporation for the prevention of cruelty to animals is one whose purpose, as stated in its certificate of incorporation, is to engage in the enforcement of laws relating to animals. Thus, it is only those corporations organized for that purpose whose officers and agents possess the powers specified in sections 373 and 374.
* A peace officer acts pursuant to his special duties when he performs the duties of his office, pursuant to the specialized nature of his employment whereby he is required or authorized to enforce any general, special or local law or charter, rule, regulation, judgment or order (Criminal Procedure Law, § 2.20).
* We note that former Agriculture and Markets Law, § 358-a, relating to the sale and importation of certain wildlife, was transferred by the Legislature by chapter 49 of the Laws of 1976 from Article 26 of the Agriculture and Markets Law to the Environmental Conservation Law (Environmental Conservation Law, § 11-0536). This is a further indication of the Legislature's intention that possession of wildlife is to be regulated exclusively by the Environmental Conservation Law.